**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTWOIN HUNT, JAMES ZOLLICOFFER, NORMAN GREEN, JAMES LEWIS and KEVIN JAMES, on behalf of themselves and other similarly situated laborers, | |
| Plaintiffs, | Case No. |
| v. | Judge |
| PERSONNEL STAFFING GROUP, LLC d/b/a MVP, THE SEGERDAHL CORP., MERCURY PLASTICS, INC., MPS CHICAGO, INC. d/b/a JET LITHO, THE PENRAY COMPANIES, INC., ADVERTISING RESOURCES, INC. d/b/a ARI PACKAGING, LAWRENCE FOODS, INC. and BLOMMER CHOCOLATE COMPANY, | Magistrate Judge |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Antwoin Hunt, James Zollicoffer, Norman Green, James Lewis and Kevin James ("Plaintiffs"), on behalf of themselves and all other similarly situated laborers, for their Complaint against Personnel Staffing Group, LLC d/b/a Most Valuable Personnel d/b/a MVP ("MVP"), Segerdahl Graphics, Inc. ("Segerdahl"), Mercury Plastics, Inc. ("Mercury"), MPS Chicago, Inc. d/b/a Jet Litho ("Jet"), The Penray Companies, Inc. ("Penray"), Advertising Resources, Inc. d/b/a ARI Packaging ("ARI"), Lawrence Foods, Inc. ("Lawrence") and Blommer Chocolate Company ("Blommer") (collectively "Defendants"), state as follows:

### I.     INTRODUCTION

1.     This lawsuit arises under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"), and challenges Defendants' discrimination against African-American laborers in their practices of making assignments to work. MVP is a temporary staffing agency that assigns temporary laborers in its labor pool to its third party client companies for a fee,

1

including to Defendants Segerdahl, Mercury, Jet, Penray, ARI, Lawrence and Blommer ("Defendant Client Companies"). Since at least December of 2012, Plaintiffs have sought work assignments from MVP's Cicero Branch Office to MVP's client companies, including the Defendant Client Companies, but on one or more occasions were not assigned to one or more of MVP's client companies, including the Defendant Client Companies, because of their race as African-Americans.

2.       Plaintiffs will seek to certify a class pursuant to Federal Rule of Civil Procedure 23(a) and (b) to pursue their Section 1981 claims on behalf of themselves and similarly situated African-American laborers. This Complaint names MVP and the Defendant Client Companies, with whom MVP bears joint responsibility, for the pattern or practice of excluding or severely restricting job assignments for African-American laborers. Because all referrals for employment at issue in this action were made to Defendant Client Companies by Defendant MVP through its office in Cicero, Illinois, the claims encompassed by this action warrant certification of a single class, with separate subclasses for each Defendant Client Company.

## II.       JURISDICTION AND VENUE

3.       This Court has jurisdiction over Plaintiffs' Section 1981 claims pursuant to 28 U.S.C. § 1331, as the claims arise under 42 U.S.C. § 1981.

4.       Venue is proper in this judicial district as a substantial number of the facts and events giving rise to Plaintiffs' claims occurred in this judicial district and as Defendants maintained their offices and transacted business within this jurisdiction.

## III.       PARTIES

### A.       Plaintiffs

5.       Plaintiff Antwoin Hunt:

      a.       is African American and resides in this judicial district;

      b.     is and, at all relevant times, has been qualified to perform work for MVP;

      c.     is and, at all relevant times, has been qualified to perform work for many of MVP's client companies, including each of the Defendant Client Companies;

      d.     is and, at all relevant times, has been available for referral for employment at each of the Defendant Client Companies through MVP; and

      e.     is and, at all relevant times, has been a laborer seeking work assignments from MVP in the types of jobs that were available at MVP's client companies, including each of the Defendant Client Companies.

6.     Plaintiff James Zollicoffer:

      a.     is African American and resides in this judicial district;

      b.     is and, at all relevant times, has been qualified to perform work for MVP;

      c.     is and, at all relevant times, has been qualified to perform work for many of MVP's client companies, including each of the Defendant Client Companies;

      d.     is and, at all relevant times, has been available for referral for employment at each of the Defendant Client Companies through MVP; and

      e.     is and, at all relevant times, has been a laborer seeking work assignments from MVP at MVP's client companies, including each of the Defendant Client Companies.

7.     Plaintiff Norman Green:

      a.     is African American and resides in this judicial district;

      b.     is and, at all relevant times, has been qualified to perform work for MVP;

    c.    is and, at all relevant times, has been qualified to perform work for many of MVP's client companies, including each of the Defendant Client Companies;

    d.    is and, at all relevant times, has been available for referral for employment at each of the Defendant Client Companies through MVP; and

    e.    is and, at all relevant times, has been a laborer seeking work assignments from MVP at MVP's client companies, including each of the Defendant Client Companies.

8.    Plaintiff James Lewis:

    a.    is African American and resides in this judicial district;

    b.    is and, at all relevant times, has been qualified to perform work for MVP;

    c.    is and, at all relevant times, has been qualified to perform work for many of MVP's client companies, including each of the Defendant Client Companies;

    d.    is and, at all relevant times, has been available for referral for employment at each of the Defendant Client Companies through MVP; and

    e.    is and, at all relevant times, has been a laborer seeking work assignments from MVP at MVP's client companies, including each of the Defendant Client Companies.

9.    Plaintiff Kevin James:

    a.    is African American and resides in this judicial district;

    b.    is and, at all relevant times, has been qualified to perform work for MVP;

c. is and, at all relevant times, has been qualified to perform work for many of MVP's client companies, including each of the Defendant Client Companies;

d. is and, at all relevant times, has been available for referral for employment at each of the Defendant Client Companies through MVP; and

e. is and, at all relevant times, has been a laborer seeking work assignments from MVP at MVP's client companies, including each of the Defendant Client Companies.

**B.**    **Defendants**

10. At all relevant times, Defendant MVP:

a. has been a corporation organized under the laws of the State of Florida;

b. has been located in and conducted business in Illinois and within this judicial district;

c. has operated as an employment agency with a branch office located at 5637 W. Roosevelt Road in Cicero, Illinois ("MVP Cicero Branch Office");

d. has been a day and temporary labor service agency as defined in the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1 *et seq*.; and

e. has been an "employer" as that term is defined in 42 U.S.C. § 1981(c).

11. At all relevant times, Defendant Segerdahl:

a. has been a corporation organized under the laws of the State of Illinois;

b. has been located in and conducted business in Illinois and within this judicial district; and

5

c. has been an "employer" as that term is defined in 42 U.S.C. § 1981(c);

12. At all relevant times, Defendant Mercury:

    a. has been a corporation organized under the laws of the State of Illinois;

    b. has been located in and conducted business in Illinois and within this judicial district; and

    c. has been an "employer" as that term is defined in 42 U.S.C. § 1981(c);

13. At all relevant times, Defendant Jet:

    a. has been a corporation organized under the laws of the State of Illinois;

    b. has been located in and conducted business in Illinois and within this judicial district; and

    c. has been an "employer" as that term is defined in 42 U.S.C. § 1981(c);

14. At all relevant times, Defendant Penray:

    a. has been a corporation organized under the laws of the State of Delaware;

    b. has been located in and conducted business in Illinois and within this judicial district; and

    c. has been an "employer" as that term is defined in 42 U.S.C. § 1981(c);

15. At all relevant times, Defendant ARI:

    a. has been a corporation organized under the laws of the State of Illinois;

    b. has been located in and conducted business in Illinois and within this judicial district; and

    c. has been an "employer" as that term is defined in 42 U.S.C. § 1981(c);

16. At all relevant times, Defendant Lawrence:

    a. has been a corporation organized under the laws of the State of Illinois;

b.     has been located in and conducted business in Illinois and within this judicial district; and

c.     has been an "employer" as that term is defined in 42 U.S.C. § 1981(c);

17.     At all relevant times, Defendant Blommer:

a.     has been a corporation organized under the laws of the State of Delaware;

b.     has been located in and conducted business in Illinois and within this judicial district; and

c.     has been an "employer" as that term is defined in 42 U.S.C. § 1981(c).

## IV.     FACTUAL BACKGROUND

18.     The temporary staffing industry is one of the fastest-growing sectors of the modern job market. Upon information, there are more than 300 temporary staffing agencies in Illinois with over 900 branch offices throughout the state. Like for-profit firms in most industries, temporary staffing agencies stay in business by being responsive to the preferences of their customers, also known as "client companies." Accordingly, temporary staffing agencies purport to act on the requested preferences of their client companies when making referrals of laborers.

20.     MVP is or has been in the business of providing third-party client companies, including the Defendant Client Companies, with low- and moderately-skilled laborers to fill jobs on a daily basis through the MVP Cicero Branch Office.

21.     MVP acts as an agent of the Defendant Client Companies in recruiting, training, assigning and paying laborers to work at the Defendant Client Companies.

22.     MVP acts as a joint employer with the Defendant Client Companies in the assignment of laborers to work at the Defendant Client Companies.

23.     As part of its business, MVP is constantly engaged in recruiting low- and moderately-skilled laborers to fill ongoing work orders.  When a laborer seeks an assignment through MVP, such laborers are making themselves available for referral to fill daily jobs at any of the third-party client companies to which MVP supplies labor, including the Defendant Client Companies.

24.     On information from former MVP Dispatchers, Drivers and Onsite Representatives, many of MVP's client companies, including each of the Defendant Client Companies, directed MVP not to send African American laborers to work at their company.

25.     In communicating their desire to not have African-American laborers referred for assignment, it was common for the Defendant Client Companies to use code words such as "guapos" (translated as "pretty boys" – ones who don't want to do dirty work) to refer to African Americans and "feos" (translated as "dirty ones"), "bilingues" (translated as "bilinguals") or "los que escuchan a La Ley" (translated as "people who listen to Spanish radio station La Ley") to refer to Hispanic laborers.

26.     On information from former MVP Dispatchers, Drivers and Onsite Representatives, MVP complied with the discriminatory requests for laborers from its client companies, including each of the Defendant Client Companies.

27.     On information from former MVP Dispatchers, MVP instructed its Dispatchers and Onsite Representatives to refrain from referring African-American laborers to assignments at many of its client companies, including the Defendant Client Companies.

28.     This instruction from MVP to its Dispatchers and Onsite Representatives at each of its client companies was often explicit.  For example, a former MVP Onsite Representative reports being disciplined by MVP management for referring African-American

laborers to MVP's client companies known to not accept African-American laborers. *See* Rosa Ceja Decl. ¶ 17, attached as Exhibit A.

29.     Another former MVP Onsite Representative reports being called to a meeting with other MVP employees and MVP senior management where she and others complained of a client company's refusal to accept African-American laborers. Despite difficulty fulfilling the client's request for a large number of daily laborers, MVP continued to comply with the directives not to send African-American laborers. *See* Pamela Sanchez Decl. ¶ 16, attached as Exhibit B.

30.     Upon information, it also is common for this discriminatory instruction to MVP Dispatchers and Onsite Representatives to manifest through thinly-veiled stereotypes about the types of people who were suitable for assignment to MVP's client companies. Lisette Robles, the former Branch Manager of MVP's Cicero office, testified that MVP screened out candidates who "look[ed] gang related or things like that." Ms. Robles directed MVP Dispatchers not to hire and assign out individuals whom the dispatchers assumed to be "gang related" based on their clothing and appearance—the presence of tattoos or "pants hanging"—their demeanor, where they lived or "just by common street knowledge." *See* Excerpts from the deposition of Lisette Robles (Feb. 13, 2015) at 75-18- 85:13, attached as Exhibit C.

31.     Even when MVP Dispatchers or Onsite Representatives attempted to refer African-American laborers to the client companies that did not accept such workers, MVP and its client companies maintained a system to ensure the African-American laborers could be easily terminated. For example, several former Dispatchers and Onsite Representatives have testified that African-American laborers were marked "Do Not Return" or "DNR'd" within hours of their assignments or at the end of their first shift. Sanchez Decl. at ¶ 3, Exhibit. B; Declaration of Maria Carretero at ¶ 9-11, attached as Exhibit D.

32.     On the rare occasion that African-American laborers were referred to such client companies, they were given only one-off assignments and placed in the worst jobs with the most unpleasant working conditions.  Declaration of Daisy Corral at ¶¶ 8-12, attached as Exhibit E.

33.     MVP publicizes the types of jobs to which it refers laborers through newspaper advertising and word-of-mouth advertising from MVP recruiters, including MVP dispatchers and drivers.   The majority of the MVP Cicero branch office's recruitment efforts are in predominantly Latino neighborhoods, and the paid advertisements are placed only in Spanish-language publications in the Chicago area.

34.     In addition to active recruiting efforts, MVP permits individuals who walk into its Cicero Branch Office to seek work assignments.

35.     When an individual comes to the Cicero Branch Office seeking work, an MVP employee typically takes contact information for the individual and either refers the individual for employment or informs the individual that s/he will be contacted when a daily job becomes open to which s/he can be referred.

36.     On multiple occasions, when the Named Plaintiffs sought work assignments at the MVP Cicero Office, they were directed to put their names on sign-in sheets that indicated the order in which they had arrived.

37.     When Plaintiffs came to the MVP Cicero Office to seek a work assignment, they often waited in the Branch office in an attempt to receive a work assignment.

38.     Other times, MVP Dispatchers at the Cicero Office told Plaintiffs they would be called when work became available and, therefore, Plaintiffs left their contact information in order that they could be called for work assignments.

39.     The MVP Cicero Branch Office has had a practice of retaining contact information and/or applications completed by candidates for referral for at least several months.

40.     When a temporary laborer seeks work from a staffing agency, they generally seek work at any client company, not a specific one.

41.     The jobs for which the MVP Cicero Branch Office refers candidates do not require any special skills, training or qualifications.

42.     From December 2012 through the present, MVP has referred for employment thousands of laborers to its client companies, including the Defendant Client Companies.

43.     Between December 2012 and the present, the Named Plaintiffs and, upon information and belief, members of the Plaintiff Class, sought work assignments at the MVP Cicero Branch Office while work assignments were being made to Segerdahl.

44.     Between December 2012 and the present, the Named Plaintiffs and, upon information and belief, members of the Plaintiff Class, sought work assignments at the MVP Cicero Branch Office while work assignments were being made to Mercury.

45.     Between December 2012 and the present, the Named Plaintiffs and, upon information and belief, members of the Plaintiff Class, sought work assignments at the MVP Cicero Branch Office while work assignments were being made to Jet.

46.     Between December 2012 and the present, the Named Plaintiffs and, upon information and belief, members of the Plaintiff Class, sought work assignments at the MVP Cicero Branch Office while work assignments were being made to ARI.

47.     Between December 2012 and the present, the Named Plaintiffs and, upon information and belief, members of the Plaintiff Class, sought work assignments at the MVP Cicero Branch Office while work assignments were being made to Lawrence.

48.     Between December 2012 and the present, the Named Plaintiffs and, upon information and belief, members of the Plaintiff Class, sought work assignments at the MVP Cicero Branch Office while work assignments were being made to Blommer.

49.     During the period from December 2012 to the present, Plaintiffs have observed that typically between a quarter and a third of the laborers at the MVP Cicero Branch Office seeking work assignments were African American.

50.     During the period from December 2012 to the present, Plaintiffs have observed at the MVP Cicero Branch Office that many laborers who appeared Hispanic and spoke Spanish were assigned to work, while laborers who appeared to be African American were not assigned work.

51.     During the period from December 2012 to the present, MVP has assigned Plaintiff Zollicoffer to work at companies other than the Defendant Client Companies through MVP's branch office in Prospect Heights, Illinois.

52.     During the period from December 2012 to the present, Plaintiff Zollicoffer also sought work through MVP's Cicero Branch Office.

53.     Plaintiff Zollicoffer sought work assignments through MVP's Cicero Branch Office in person and by calling the branch office when MVP was referring laborers to work assignments at the Defendant Client Companies.

54.     However, during the period from December 2012 to the present, Plaintiff Zollicoffer has never been assigned to work through MVP's Cicero Branch Office to any employer, including the Defendant Client Companies, even though he was considered qualified to work and was assigned to work by another MVP office.

55.     During the period from December 2012 to the present, Plaintiff Zollicoffer has never been offered any work assignments from MVP to any of the Defendant Client Companies.

56.     During the period from December 2012 to the present, Plaintiff Hunt has sought work through MVP's Cicero Branch Office repeatedly, in person and by calling the branch office.

57.     However, during the period from December 2012 to the present, Plaintiff Hunt has been assigned to work through MVP's Cicero Branch Office on only a few occasions when he was present at the branch office or called, but has never been assigned to any of the Defendant Client Companies.

58.     During the period from December 2012 to the present, Plaintiff Hunt has also been available for work assignments from MVP on days he was not present in MVP's Cicero Branch Office and on which MVP was making work assignments to the Defendant Client Companies, but has been offered no work assignments from this office to any of the Defendant Client Companies.

59.     During the period of July 2014 to the present, Plaintiff Green has sought work through MVP's Cicero Branch Office repeatedly, in person and by calling the branch office.

60.     However, during the period from July 2014 to the present, Plaintiff Green has been assigned to work through MVP's Cicero Branch Office on only a few occasions when he was present at the branch office or called, but has never been assigned to any of the Defendant Client Companies.

61.     During the period from July 2014 to the present, Plaintiff Green has also been available for work assignments from MVP on days he was not present in MVP's Cicero Branch Office and on which MVP was making work assignments to the Defendant Client Companies, but has been offered no work assignments from this office to any of the Defendant Client Companies.

62.     During the period of the fall of 2014 to the present, Plaintiff Lewis has sought work through MVP's Cicero Branch Office repeatedly, in person and by calling the branch office.

63. However, during the period from the fall of 2014 to the present, Plaintiff Lewis has been assigned to work through MVP's Cicero Branch Office on only a few occasions when he was present at the branch office or called, but has never been assigned to any of the Defendant Client Companies.

64. During the period from the fall of 2014 to the present, Plaintiff Lewis has also been available for work assignments from MVP on days he was not present in MVP's Cicero Branch Office and on which MVP was making work assignments to the Defendant Client Companies, but has been offered no work assignments from this office to any of the Defendant Client Companies.

65. During the period of the fall of 2014 to the present, Plaintiff James has sought work through MVP's Cicero Branch Office repeatedly, in person and by calling the branch office.

66. However, during the period from the fall of 2014 to the present, Plaintiff James has been assigned to work through MVP's Cicero Branch Office on only a few occasions when he was present at the branch office or called, but has never been assigned to any of the Defendant Client Companies.

67. During the period from the fall of 2014 to the present, Plaintiff James has also been available for work assignments from MVP on days he was not present in MVP's Cicero Branch Office and on which MVP was making work assignments to the Defendant Client Companies, but has been offered no work assignments from this office to any of the Defendant Client Companies.

68. While in the MVP Cicero Branch Office, Plaintiffs have seen MVP vans and/or busses transport individuals who appeared to be Latino, many of whom spoke Spanish, but none who appeared to be African American.

14

69. Upon information from former dispatchers, MVP only or almost exclusively provides rides to the MVP Cicero Branch Office for laborers in predominantly Latino neighborhoods.

70. Plaintiffs are unaware of any vans and/or busses available to transport laborers to MVP's Cicero office from predominantly African-American communities on the west side of Chicago, where Plaintiffs Hunt, Zollicoffer and Green reside or have resided, or from the south side of Chicago, where Plaintiffs Lewis and James reside or resided.

71. Plaintiffs are and, at all relevant times, have been qualified to work at the MVP Cicero Branch Office's client companies, including the Defendant Client Companies.

72. Other African-American laborers who sought work assignments from MVP's Cicero branch office were likewise qualified to work at the MVP Cicero Branch Office's client companies, including the Defendant Client Companies.

73. MVP failed to assign Plaintiffs to work at several of its client companies, including the Defendant Client Companies, because of their race.

74. MVP refused to assign other similarly situated African-American laborers to work at its client companies, including the Defendant Client Companies, because of their race.

75. MVP assigned other, non-African-American laborers to work at its client companies, including the Defendant Client Companies, to fill jobs that required no special training, education, knowledge or experience.

76. MVP assigned other, non-African-American laborers to work at its client companies, including the Defendant Client Companies, even though they sought work assignments after Plaintiffs and other similarly situated African American laborers, who were not given assignments.

15

77.     Each Defendant Client Company had the authority, and exercised that authority, to select the characteristics of laborers that MVP assigned and did not assign to work at its facility.   MVP implemented the instructions provided by the Defendant Client Companies about which laborers to assign to work at the Client Companies.

78.     Each Defendant Client Company and MVP exercised authority jointly over the choice of which laborers to assign to work at the Client Companies, when and how to discipline workers who were assigned to work at the Client Companies and the time, place, and scope of the work to be performed.

79.     On information from former MVP dispatchers, MVP failed to assign Plaintiffs and other similarly situated African-American laborers to work at the Defendant Client Companies because it was complying with a discriminatory request from each Defendant Client Company to steer African-American laborers away from its company.

### V.     CLASS ACTION ALLEGATIONS

80.     The Plaintiffs' claims are susceptible to class certification pursuant to Rule 23(a) and (b)(3), Fed.R.Civ.P.

81.     The Class is defined to include "All African-Americans who sought work assignments through the MVP Cicero Office and were eligible to work at one or more of the Defendant Client Companies at any time between December 6, 2012 and the date of judgment but who, on one or more occasions, were not assigned to work at one of the Defendant Client Companies by MVP."

82.     In addition, separate Subclasses should be certified to include:

> a.     For claims against Segerdahl ("Segerdahl Subclass"): "All African Americans who sought work assignments through the MVP Cicero Office and were eligible to work at Segerdahl Graphics, Inc. at any time between

December 6, 2012 and the date of judgment but who, on one or more occasions, were not assigned to work at Segerdahl Graphics, Inc. by MVP."

b. For claims against Mercury ("Mercury Subclass"): "All African Americans who sought work assignments through the MVP Cicero Office and were eligible to work at Mercury Plastics, Inc. at any time between December 6, 2012 and the date of judgment but who, on one or more occasions, were not assigned to work at Mercury Plastics, Inc. by MVP."

c. For claims against Jet ("Jet Subclass"): "All African Americans who sought work assignments through the MVP Cicero Office and were eligible to work at MPS Chicago, Inc. d/b/a Jet Litho at any time between December 6, 2012 and the date of judgment but who, on one or more occasions, were not assigned to work at MPS Chicago, Inc. d/b/a Jet Litho by MVP."

d. For claims against Penray ("Penray Subclass"): "All African Americans who sought work assignments through the MVP Cicero Office and were eligible to work at The Penray Companies, Inc. at any time between December 6, 2012 and the date of judgment but who, on one or more occasions, were not assigned to work at The Penray Companies, Inc. by MVP."

e. For claims against ARI ("ARI Subclass"): "All African Americans who sought work assignments through the MVP Cicero Office and were eligible to work at Advertising Resources, Inc. d/b/a ARI Media at any time between December 6, 2012 and the date of judgment but who, on one

or more occasions, were not assigned to work at Advertising Resources, Inc. d/b/a ARI Media by MVP."

f. For claims against Lawrence ("Lawrence Subclass"): "All African Americans who sought work assignments through the MVP Cicero Office and were eligible to work at Lawrence Foods, Inc. at any time between December 6, 2012 and the date of judgment but who, on one or more occasions, were not assigned to work at Lawrence Foods, Inc. by MVP."

g. For claims against Blommer ("Blommer Subclass"): "All African Americans who sought work assignments through the MVP Cicero Office and were eligible to work at Blommer Chocolate Company at any time between December 6, 2012 and the date of judgment but who, on one or more occasions, were not assigned to work at Blommer Chocolate Company by MVP."

83. Certification of the class and subclasses pursuant to Rule 23(a) and (b)(3) is warranted because:

a. This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and the Defendants are located in this District.

b. The class is so numerous that joinder of all members is impracticable. Defendants jointly employed thousands of individuals who were assigned to daily laborer jobs through the Cicero MVP office between December 6, 2012 and the date of judgment. On information and belief, there were thousands of African-American laborers who sought assignments to work

18

at the MVP Cicero office to daily laborer jobs at employers, including the

Defendant Client Companies.

c. One or more questions of law or fact are common to the class, including:

(i) Whether the Defendant Client Companies have engaged in a pattern or practice of denying employment to African-American laborers because of their race;

(ii) Whether the Defendant Client Companies directed MVP to refrain from assigning African-American laborers to work at the Client Companies;

(iii) Whether MVP and the Defendant Client Companies are joint employers of the laborers assigned to work at the Client Companies;

(iv) Whether the choices MVP made of which laborers it assigned for work through its Cicero office were made in conformity with directions provided by the Defendant Client Companies;

(v) Whether the conduct complained of herein constitutes a violation of Section 1981;

(vi) Whether injunctive relief is warranted against MVP and/or the Defendant Client Companies;

d. Plaintiffs will fairly and adequately represent and protect the interests of the Class members. Plaintiffs' Counsel are competent and experienced in litigating discrimination and other employment class actions;

e. The class representatives and the members of the class have been subject to, and challenge, the same practices;

f. Issues common to the class predominate over issues unique to individual class members, and pursuit of the claims as a class action is superior to other available methods for the fair and efficient resolution of this controversy;

g.      Adjudication of these claims as a class action can be achieved in a

manageable manner.

84.      Pursuit of the claims set forth herein through a class action is an appropriate

method for the fair and efficient adjudication of this lawsuit.

**COUNT I**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American**
**laborers as against Defendant MVP**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 84 as though set forth

herein.

85.      This Count arises under Section 1981 for Defendant MVP's discriminatory

practices in assigning laborers to several of its client companies, including the Defendant Client

Companies, as described more fully in paragraphs 24 – 79, *supra*, which resulted in disparate

treatment of Plaintiffs and a class of African-American laborers.

86.      Defendant MVP engaged in assignment practices that discriminated against

Plaintiffs and other similarly situated African-American laborers on the basis of their race,

African American, as described more fully in paragraphs 24 – 79, *supra*, thereby violating the

Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

87.      As described more fully in paragraphs 24 – 79, *supra*, Defendant MVP engaged

in a pattern and practice of racial discrimination against Plaintiffs and other similarly situated

African-American laborers based on their race as African Americans.

88.      As described more fully in paragraphs 24 – 79, *supra*, Defendant MVP's

discrimination against Plaintiffs and other similarly situated laborers based on their race as

African Americans was intentional.

89.     Defendant MVP failed or refused to assign African-American applicants to work at the several of its client companies, including the Defendant Client Companies, in favor of Latino employees on the basis of race alone, as described more fully in paragraphs 24 – 79, *supra*.

90.     On information from former MVP dispatchers, Defendant MVP's failure to assign Plaintiffs and other similarly situated African-American laborers to work at the Defendant Client Companies was, at least in part, because it was complying with a discriminatory request from the Defendant Client Companies not to refer African-American laborers to their respective facilities while favoring referrals of Latino laborers.

91.     On information from former MVP dispatchers, the Defendant Client Companies' requests to MVP to steer African American laborers away from their respective companies was based on their race as African Americans.

92.     As a direct and proximate result of the willful and reckless acts or omissions of Defendants MVP alleged in paragraphs 24 – 79, *supra*, all Plaintiffs and similarly situated African-American laborers have suffered damages.

93.     Defendant MVP's conduct in not assigning Plaintiffs and other similarly situated African-American laborers to work at the Defendant Client Companies was willful and/or reckless, warranting the award of punitive damages.

**WHEREFORE**, Plaintiffs and the Class respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendant MVP pursuant to Rule 23;

B.  enjoin Defendant MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers;

C.  enter a judgment in their favor and against Defendant MVP for back pay, interest and other non-liquidated benefits flowing from the denial of employment as well as punitive damages in amounts to be determined at trial;

D. award all reasonable attorney's fees and costs in bringing this action, including the costs of expert work;

E. grant such other relief as this Court deems just and equitable.

## COUNT II
### Violation of 42 U.S.C. § 1981 – Race-based Discrimination
### Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and Segerdahl
### *Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 93 as though set forth herein.

94.     This Count arises under Section 1981 for Segerdahl's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with Segerdahl's discriminatory requests as described more fully in paragraphs 24 – 79, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

95.     As described more fully above and specifically in paragraphs 24 – 79, *supra*, Segerdahl intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

96.     Segerdahl made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, Segerdahl requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at Segerdahl based on their race, African-American.

97.     In the alternative, Segerdahl knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at Segerdahl.

98.     Segerdahl failed to exercise reasonable care to ensure that MVP, its agent for assigning laborers to work at its facilities, did not engage in discriminatory assignment practices.

99.     Segerdahl's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

100.    As a direct and proximate result of the acts or omissions of Segerdahl and MVP alleged in paragraphs 24 – 79, *supra*, Plaintiffs and similarly situated African-American job applicants suffered damages.

101.    Segerdahl and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiffs and the Segerdahl Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendants MVP and Segerdahl pursuant to Rule 23;

B. enjoin Defendants Segerdahl and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Segerdahl Subclass;

C. enter a judgment in their favor and against Defendants Segerdahl and MVP for back pay damages for Plaintiffs and the Segerdahl Subclass in amounts to be determined at trial;

D. award all reasonable attorney's fees and costs in bringing this action, including the costs of expert work;

E. hold Defendants Segerdahl and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. grant such other relief as this Court deems just and equitable.

**COUNT III**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and Mercury**
*Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 101 as though set forth herein.

102.     This Count arises under Section 1981 for Mercury's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with Mercury's discriminatory requests as described more fully in paragraphs 24 – 79, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

103.     As described more fully above and specifically in paragraphs 24 – 79, *supra*, Mercury intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

104.     Mercury made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, Mercury requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at Mercury based on their race, African American.

105.     In the alternative, Mercury knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at Mercury.

106.     Mercury failed to exercise reasonable care to ensure that MVP, its agent for assigning laborers to work at its facilities, did not engage in discriminatory assignment practices.

107.     Mercury's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

108.     As a direct and proximate result of the acts or omissions of Mercury and MVP alleged in paragraphs 24 – 79, *supra*, Plaintiffs and similarly situated African-American job applicants suffered damages.

109.     Mercury and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiffs and the Mercury Subclass respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendants MVP and Mercury pursuant to Rule 23;

B.  enjoin Defendants Mercury and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Mercury Subclass;

C.  enter a judgment in their favor and against Defendants Mercury and MVP for back pay damages for Plaintiffs and the Mercury Subclass in amounts to be determined at trial;

D.  award all reasonable attorney's fees and costs in bringing this action, including the costs of expert work;

E.  hold Defendants Mercury and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F.  grant such other relief as this Court deems just and equitable.

**COUNT IV**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American**
**laborers as against Defendants MVP and Jet**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 109 as though set forth herein.

110.    This Count arises under Section 1981 for Jet's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with Jet's discriminatory requests as described more fully in paragraphs 24 – 79, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

111.    As described more fully above and specifically in paragraphs 24 – 79, *supra*, Jet intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

112.    Jet made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, Jet requested that its agent steer Plaintiffs

and other similarly situated African Americans away from work at Jet based on their race, African American.

113.    In the alternative, Jet knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at Jet.

114.    Jet failed to exercise reasonable care to ensure that MVP, its agent for assigning laborers to work at its facilities, did not engage in discriminatory assignment practices.

115.    Jet's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

116.    As a direct and proximate result of the acts or omissions of Jet and MVP alleged in paragraphs 24 – 79, *supra*, Plaintiffs and similarly situated African-American job applicants suffered damages.

117.    Jet and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiffs and the Jet Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendants MVP and Jet pursuant to Rule 23;

B. enjoin Defendants Jet and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Jet Subclass;

C. enter a judgment in their favor and against Defendants Jet and MVP for back pay damages for Plaintiffs and the Jet Subclass in amounts to be determined at trial;

D. award all reasonable attorney's fees and costs in bringing this action, including the costs of expert work;

E. hold Defendants Jet and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. grant such other relief as this Court deems just and equitable.

**COUNT V**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and Penray**
*Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 117 as though set forth herein.

118. This Count arises under Section 1981 for Penray's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with Penray's discriminatory requests as described more fully in paragraphs 24 – 79, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

119. As described more fully above and specifically in paragraphs 24 – 79, *supra*, Penray intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

120. Penray made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, Penray requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at Penray based on their race, African-American.

121. In the alternative, Penray knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at Penray.

122. Penray failed to exercise reasonable care to ensure that MVP, its agent for assigning laborers to work at its facilities, did not engage in discriminatory assignment practices.

123. Penray's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

124. As a direct and proximate result of the acts or omissions of Penray and MVP alleged in paragraphs 24 – 79, *supra*, Plaintiffs and similarly situated African-American job applicants suffered damages.

125. Penray and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiffs and the Penray Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendants MVP and Penray pursuant to Rule 23;

B. enjoin Defendants Penray and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Penray Subclass;

C. enter a judgment in their favor and against Defendants Penray and MVP for back pay damages for Plaintiffs and the Penray Subclass in amounts to be determined at trial;

D. award all reasonable attorney's fees and costs in bringing this action, including the costs of expert work;

E. hold Defendants Penray and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. grant such other relief as this Court deems just and equitable.

**COUNT VI**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and ARI**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 125 as though set forth herein.

126. This Count arises under Section 1981 for ARI's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with ARI's discriminatory requests as described more fully in paragraphs 24 – 79, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

127.     As described more fully above and specifically in paragraphs 24 – 79, *supra*, ARI intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

128.     ARI made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, ARI requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at ARI based on their race, African-American.

129.     In the alternative, ARI knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at ARI.

130.     ARI failed to exercise reasonable care to ensure that MVP, its agent for assigning laborers to work at its facilities, did not engage in discriminatory assignment practices.

131.     ARI's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

132.     As a direct and proximate result of the acts or omissions of ARI and MVP alleged in paragraphs 24 – 79, *supra*, Plaintiffs and similarly situated African-American job applicants suffered damages.

133.     ARI and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiffs and the ARI Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendants MVP and ARI pursuant to Rule 23;

B. enjoin Defendants ARI and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the ARI Subclass;

C. enter a judgment in their favor and against Defendants ARI and MVP for back pay damages for Plaintiffs and the ARI Subclass in amounts to be determined at trial;

D. award all reasonable attorney's fees and costs in bringing this action, including the costs of expert work;

E. hold Defendants ARI and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. grant such other relief as this Court deems just and equitable.

**COUNT VII**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and Lawrence**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 133 as though set forth herein.

134. This Count arises under Section 1981 for Lawrence's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with Lawrence's discriminatory requests as described more fully in paragraphs 24 – 79, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

135. As described more fully above and specifically in paragraphs 24 – 79, *supra*, Lawrence intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

136. Lawrence made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, Lawrence requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at Lawrence based on their race, African American.

137. In the alternative, Lawrence knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at Lawrence.

138. Lawrence failed to exercise reasonable care to ensure that MVP, its agent for assigning laborers to work at its facilities, did not engage in discriminatory assignment practices.

139. Lawrence's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

140. As a direct and proximate result of the acts or omissions of Lawrence and MVP alleged in paragraphs 24 – 79, *supra*, Plaintiffs and similarly situated African-American job applicants suffered damages.

141. Lawrence and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiffs and the Lawrence Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendants MVP and Lawrence pursuant to Rule 23;

B. enjoin Defendants Lawrence and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Lawrence Subclass;

C. enter a judgment in their favor and against Defendants Lawrence and MVP for back pay damages for Plaintiffs and the Lawrence Subclass in amounts to be determined at trial;

D. award all reasonable attorney's fees and costs in bringing this action, including the costs of expert work;

E. hold Defendants Lawrence and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. grant such other relief as this Court deems just and equitable.

**COUNT VIII**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and Blommer**
***Class Action***

31

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 141 as though set forth herein.

142. This Count arises under Section 1981 for Blommer's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with Blommer's discriminatory requests as described more fully in paragraphs 24 – 79, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

143. As described more fully above and specifically in paragraphs 24 – 79, *supra*, Blommer intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

144. Blommer made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, Blommer requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at Blommer based on their race, African-American.

145. In the alternative, Blommer knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at Blommer.

146. Blommer failed to exercise reasonable care to ensure that MVP, its agent for assigning laborers to work at their respective facilities, did not engage in discriminatory assignment practices.

147. Blommer's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

148.     As a direct and proximate result of the acts or omissions of Blommer and MVP alleged in paragraphs 24 – 79, *supra*, Plaintiffs and similarly situated African-American job applicants suffered damages.

149.     Blommer and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiffs and the Blommer Subclass respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendants MVP and Blommer pursuant to Rule 23;

B.  enjoin Defendants Blommer and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Blommer Subclass;

C.  enter a judgment in their favor and against Defendants Blommer and MVP for back pay damages for Plaintiffs and the Blommer Subclass in amounts to be determined at trial;

D.  award all reasonable attorney's fees and costs in bringing this action, including the costs of expert work;

E.  hold Defendants Blommer and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F.  grant such other relief as this Court deems just and equitable.

Dated: December 6, 2016

Respectfully submitted,

*/s/Christopher J. Williams*
Christopher J. Williams
Alvar Ayala
Workers' Law Office, P.C.
53 W. Jackson Blvd, Suite 701
Chicago, Illinois 60604
(312) 795-9121

Joseph M. Sellers
Shaylyn Cochran
Miriam R. Nemeth
Cohen Milstein Sellers & Toll P.L.L.C.
1100 New York Avenue, N.W., Suite 500
Washington, D.C. 20005
(202) 408-4600

Attorneys for Plaintiffs

33