# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTWOIN HUNT, JAMES ZOLLICOFFER, NORMAN GREEN, JAMES LEWIS, and KEVIN JAMES, on behalf of themselves and other similarly situated laborers, </br></br>Plaintiffs,</br></br>v.</br></br>PERSONNEL STAFFING GROUP, LLC, d/b/a MVP, THE SEGERDAHL CORP., MERCURY PLASTICS, INC., MPS CHICAGO, INC. d/b/a JET LITHO, THE PENRAY COMPANIES, INC., ADVERTISING RESOURCES, INC. d/b/a ARI PACKAGING, LAWRENCE FOODS, INC., and BLOMMER CHOCOLATE COMPANY,</br></br>Defendants. | No. 16-CV-11086</br></br>Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Five African American laborers sued Personnel Staffing Group, LLC, d/b/a MVP ("MVP"), an employment agency, and seven of its client companies for race discrimination. Plaintiffs Antwoin Hunt, James Zollicoffer, Norman Green, James Lewis, and Kevin James, on behalf of themselves and other similarly situated laborers, allege that MVP and its client companies refused to provide them with job assignments on account of their race and in violation of 42 U.S.C. § 1981 ("Section 1981"). The defendant client companies move to dismiss the claims against them for lack of standing and for failure to state a claim and also move to dismiss or strike any time-barred claims and allegations. Because the plaintiffs have alleged sufficient facts to have standing and to state a claim under Section 1981 against each of the defendant

client companies, and because the complaint does not unambiguously establish that the claims are time-barred, the Court denies the defendants' motions to dismiss.

## BACKGROUND[1]

MVP is a temporary staffing agency that provides its client companies with low- and moderately-skilled laborers to fill jobs on a daily basis. Defendants The Segerdahl Corp. ("Segerdahl"), Mercury Plastics, Inc. ("Mercury"), MPS Chicago, Inc. d/b/a Jet Litho ("MPS"), The Penray Companies, Inc. ("Penray"), Advertising Resources, Inc. d/b/a ARI Packaging ("ARI"), Lawrence Foods, Inc. ("Lawrence Foods"), and Blommer Chocolate Company ("Blommer") are clients of MVP (collectively "the defendant client companies"). MVP acts as an agent of the defendant client companies in recruiting, training, assigning, and paying laborers to work at the companies. MVP also acts as a joint employer with the defendant client companies in the assignment of laborers to work at the companies. The jobs for which MVP assigns laborers do not require any special skills, training, or qualifications. MVP operates a branch office located in Cicero, Illinois.

MVP recruits laborers for its client companies through various forms of advertising. Individuals seeking work assignments from MVP may walk into the Cicero office to request work. A walk-in is typically asked to provide his contact information to an MVP employee, who then assigns work to the individual or informs the person that he will be contacted when a daily job becomes available. MVP's Cicero office retains contact information and applications for at least several months.

---

[1] For purposes of the motion to dismiss, all well-pleaded (*i.e.*, non-conclusory) facts in the plaintiffs' complaint are accepted as true. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Hunt, Zollicoffer, Green, Lewis, and James were qualified to work at the defendant client companies and, at various times throughout December 2012 to December 2016, they repeatedly sought work assignments in person and by phone from MVP's Cicero office. On a few occasions, Hunt, Green, Lewis, and James received work assignments, but they were never assigned to any of the defendant client companies. Zollicoffer never received a work assignment from MVP, including to any of the defendant client companies.

During their visits to MVP's Cicero office, the plaintiffs observed that typically between a quarter and a third of the laborers seeking work assignments at the office were African American. They further observed that many of the laborers who appeared Hispanic or spoke Spanish were given work assignments. However, laborers who appeared to be African American were not assigned work. Furthermore, the majority of MVP's recruitment efforts were in predominantly Latino neighborhoods or via Spanish-language media sources. MVP also provides transportation for some of its laborers, but the plaintiffs observed that the laborers who received transportation appeared to be Latino or spoke Spanish and none appeared to be African American.

According to information from former MVP dispatchers, drivers, and onsite representatives, many of MVP's client companies, including the defendant client companies, directed MVP not to send African American laborers to work at their companies. MVP complied with these requests and instructed its employees to refrain from referring African American laborers to assignments at many of its client companies, including the defendant client companies. When making their discriminatory requests, the defendant client companies used code words to refer to African American laborers and Hispanic laborers. According to a former MVP onsite representative, MVP management disciplined her for failing to comply with its

3

client companies' directions to steer African American laborers away from their companies. MVP and its clients companies also had a system in place so that client companies could terminate an African American laborer by marking the laborer as "Do Not Return."

The plaintiffs filed their complaint on December 6, 2016, alleging intentional discrimination in violation of Section 1981 against MVP and the defendant client companies. Segerdahl and Lawrence Foods filed a motion to dismiss and strike as time-barred the plaintiffs' Section 1981 claims that are based on events occurring more than two years prior to the filing of the complaint. Segerdahl and Lawrence Foods Mot. to Dismiss and Strike Time-Barred Section 1981 Claims ("Segerdahl Motion"), ECF No. 51. Mercury then filed a motion to dismiss the complaint for lack of standing and for failure to state a claim. Mercury Mot. to Dismiss for Lack of Standing and for Failure to State a Claim ("Mercury Motion"), ECF No. 77. All of the defendant client companies joined both motions.[2] The plaintiffs filed a response to the Segerdahl Motion before the Mercury Motion was filed, and later filed a revised response addressing both motions. *See* Pls.' Resp. to Mot. to Dismiss and Strike, ECF No. 73; Pls.' Revised Resp. to Mot. to Dismiss and Strike ("Pls.' Resp."), ECF No. 92. The defendants jointly filed one reply in support of both motions. Defs.' Consolidated Reply in Supp. of their Mot. to Dismiss ("Defs.' Reply"), ECF No. 96.

---

[2] *See* ARI's Mot. for Judgment on the Pleadings, ECF No. 63; Penray's Mot. to Dismiss and Strike Time-Barred Claims, ECF No. 66; MPS Mot. to Dismiss and Strike Time-Barred Claims, ECF No. 71; Blommer's Mot. to Dismiss and Strike Time-Barred Claims, ECF No. 75; Mercury Motion, ECF No. 77 (adopting and incorporating the Segerdahl Motion); Blommer Mot. to Dismiss for Lack of Standing and for Failure to State a Claim, ECF No. 84; Penray's and ARI's Mot. to Dismiss for Lack of Standing and for Failure to State a Claim, ECF No. 85; Segerdahl's and Lawrence Foods's Mot. to Dismiss for Lack of Standing and Failure to State a Claim, ECF No. 87. In joining the Segerdahl Motion, ARI moved under Rule 12(c) for entry of judgment in favor of ARI for the time-barred claims, arguing that a Rule 12(c) motion is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6).

**DISCUSSION**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the facts alleged allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff's claims must include enough details to present "a story that holds together." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014) (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)). When considering a motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff and draws all inferences from the alleged facts in the plaintiff's favor. *Id.*

The crux of the debate presented in the parties' briefs is whether the plaintiffs had (or were seeking) an employment contract and if so with whom. The defendants maintain that the allegations of the complaint do not afford the plaintiffs standing to pursue Section 1981 claims because the complaint fails to adequately allege the requisites of a contractual relationship with which the defendants interfered. The defendants' challenge falls short, however, because it misconstrues applicable precedent and demands more detail at the pleading stage than is required to state a plausible claim under Section 1981.

**I.      Standing and Failure to State a Claim**

The client company defendants argue that the plaintiffs' Section 1981 claims should be dismissed because the plaintiffs "lack standing" and fail to state a claim upon which relief can be

granted.[3] Memo. in Supp. of Mercury Motion 1, ECF No. 78. Section 1981 provides that all persons shall have the same rights as white citizens to make and enforce contracts, which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. In the employment context, the statute prohibits an employer from discriminating against a job applicant or an employee on the basis of race. *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005); *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014). Section 1981 applies to at-will employment relationships because such relationships are sufficiently contractual. *Walker v. Abbott Labs.*, 340 F.3d 471, 475-77 (7th Cir. 2003).[4]

The defendant client companies argue that any claim brought under Section 1981 "must initially identify a contract the plaintiff had or sought with the defendant, under which the plaintiff has rights." Memo. in Supp. of Mercury Motion 2, ECF No. 78. Therefore, the defendants assert, the plaintiffs "must either have had a contract or have sought to make a contract" with the defendant client companies to have standing to bring a Section 1981 claim

---

[3] The defendants make their motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. Their Rule 12(b)(1) motion for lack of subject matter jurisdiction is presumably based upon the defendants' argument that the plaintiffs lack standing to bring their Section 1981 claims. As described more fully below, the defendants argue that the plaintiffs lack standing because they have not alleged that they entered into a contract with the defendants, which, according to the defendants, is required to bring a claim under Section 1981. This argument is one of statutory, not Constitutional (Article III) standing—that is, whether the plaintiffs are within the class of persons who have a right to sue under § 1981. *See generally Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386-88 (2014). Accordingly, the Court will analyze it under Rule 12(b)(6) instead of Rule 12(b)(1). *See, e.g.*, *Alarm Detection Sys., Inc. v. Orland Fire Protection Dist.*, 194 F. Supp. 3d 706, 713 (N.D. Ill. 2016); *D.G. v. Diversified Adjustment Serv., Inc.*, No. 11 C 2062, 2011 WL 5506078, at *1 (N.D. Ill. Oct. 18, 2011).

[4] In finding that at-will employment relationships come within the scope of Section 1981, the Seventh Circuit held that an at-will employment relationship is contractual because an employer offers, either implicitly or explicitly, to pay the employee for the performance of specified work, and the employee accepts that offer by either promising to or actually performing the work. *Walker v. Abbott Laboratories*, 340 F.3d 471, 476-77 (7th Cir. 2003).

against them. *Id.* at 1. In support of their argument, they cite to the Supreme Court's ruling in *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006). The defendants, however, have misconstrued the holding in *Domino's Pizza*. The case requires the plaintiff to have (or be pursuing) a contractual interest, but that contractual interest need not be with the defendant.

The issue before the Court in *Domino's Pizza* was whether a plaintiff who lacks any rights under an existing contractual relationship with the defendant, and who has not been prevented from entering into such a contractual relationship, may bring a Section 1981 claim. 546 U.S. at 472. The plaintiff was the sole shareholder of a corporation and alleged that the defendants violated their contracts with the corporation on account of the plaintiff's race. *Id.* at 472-74. The Court ruled that the plaintiff could not bring his claim because, as a shareholder, he had no rights and no liabilities under the corporation's contracts. *Id.* at 477. The Court held that "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as ***the plaintiff*** has or would have rights under the existing or proposed contractual relationship." *Id.* at 476 (emphasis added). But nowhere in its opinion did the Court hold, as the defendant client companies assert, that a Section 1981 defendant also must have rights under the subject contract. *Id.* That is to say, the contractual relationship on which a Section 1981 claim is founded need not be a contractual relationship between the plaintiff and the defendant; it may rest on discriminatory interference by the defendant with the plaintiff's contractual relationship (or attempt to create a contractual relationship) with a third party. *Cf. Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 915 (7th Cir. 1991) (local union's discriminatory job referral system violated Section 1981 because it impeded creation of employment contract between the contractor and African-American members of the union).

Contrary to the client companies' argument, under *Domino's Pizza* there is no requirement that a ***defendant*** have rights under the contract at issue in a Section 1981 claim. In fact, established law holds precisely the opposite. "A third party's interference with an individual's equal opportunity to enter into contracts or purchase property can support civil-rights claims under § 1981." *Shaikh v. City of Chicago*, 341 F.3d 627, 630 (7th Cir. 2003). *See also, e.g.*, *Deets v. Massman Constr. Co.*, 811 F.3d 978, 984 (7th Cir. 2016) ("the purported lack of an employment relationship between [the plaintiff] and the individual [defendant] companies likely doesn't matter for purposes of [the plaintiff's] claim under § 1981 because 'a third party can be liable under § 1981 for *interfering* with the plaintiff's relationship with his employer'") (quoting *Sklyarsky v. Means-Knaus Partners, LP*, 777 F.3d 892, 895-96 (7th Cir. 2015) (emphasis in original)); *Thomas v. Coach Outlet Store*, 16 C 3950, 2017 WL 386656, at *2 (N.D. Ill. Jan. 27, 2017) (A defendant "can be liable under [Section] 1981 for *interfering* with the plaintiff's relationship with his employer, even when the plaintiff has no direct contractual relationship with the defendant itself.") (emphasis in original). A plaintiff, therefore, may pursue Section 1981 claims against a defendant with whom the plaintiff has no contractual relationship. Such a claim does not run afoul of the holding in *Domino's Pizza* so long as the plaintiff has or would have rights under the existing or proposed contract.[5]

---

[5] Further, a private defendant can be held liable for a violation of Section 1981 under a theory of vicarious liability. *See Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 404 (1982) (O'Connor, J., concurring) ("nothing in the Court's opinion prevents the respondents from litigating the question of the employers' liability under § 1981 by attempting to prove the traditional elements of *respondeat superior.*"); *Odeluga v. PCC Cmty. Wellness Ctr.*, No. 12-cv-07388, 2013 WL 4552866, at *5 (N.D. Ill. Aug. 27, 2013); *Hill v. Shell Oil Co.*, 78 F. Supp. 2d 764, 778-79 (N.D. Ill. 1999). A governmental defendant, by contrast, is not subject to *respondeat superior* liability under Section 1981. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989).

The relationship on which the plaintiffs base their Section 1981 claim is their contractual relationship (or prospective relationship) with the staffing agency, MVP.[6] In reply, the defendant client companies expand their standing argument by contesting the adequacy of the plaintiffs' allegations concerning a contractual relationship between the plaintiffs and MVP (rather than the absence of allegations about a contract involving the client companies, which was their argument in their opening brief). Defs.' Reply 5, ECF No. 96. Arguing that the complaint "never uses the word 'contract,'"—as if pleading rules require the use of specific vocabulary (a notion abandoned at least 80 years ago, when forms of action were abolished, *see Cablevision of the Midwest, Inc. v. City of Brunswick, Ohio*, 117 F. Supp. 2d 658, 661 (N.D. Ohio 2000) (the creation of the civil action as the one form of action under the Federal Rules of Civil Procedure was meant to "obviate the need for magic words in pleadings"))—they maintain that the allegations of the complaint do not plausibly allege that the plaintiffs ever formed a contractual relationship with MVP. *Id*. at 6-7 ("Nothing in these facts creates a plausible claim that multiple contracts for employment were formed through a process of mutual assent and a bargained for exchange of an offer, acceptance, and consideration."). The formation of contracts, the defendants maintain, "is a pre-requisite under Section 1981." *Id.* at 5.

The simple response to this argument is: No it isn't. Again, as the Court explained in *Domino's Pizza*, a plaintiff is not required to identify a contractual relationship that *already*

---

[6] Although the plaintiffs respond to the motion to dismiss by focusing on their contractual relationship with MVP, *see infra*, the allegations of the complaint also appear sufficient, if minimally, to plausibly support a theory that the defendant client companies violated Section 1981 by refusing to enter into employment contracts with the plaintiffs by means of instructions to MVP not to refer African-Americans to open positions. Compl. ¶¶ 77-79, ECF No. 1. It appears that the plaintiffs are maintaining that the relevant contractual interest is with MVP, rather than with the defendant client companies, because it is clear that they were unable to enter into a contract with the client companies and therefore claims based on interference with that relationship would be subject to the two-year statute of limitations applicable to pre-contract formation claims rather than the four-year statute applicable to post-contract enforcement claims.

exists, because Section 1981 "protects the would-be contractor along with those who already have made contracts." 546 U.S. at 476. The complaint pleads sufficient facts to plausibly establish that the plaintiffs, at the very least, *sought* a contract for work with MVP. The defendants themselves acknowledge this by admitting that the plaintiffs' allegations "give rise to potential pre-contract formation claims." Defs.' Reply 7, ECF No. 96. That is all that is required to satisfy the contract requirement for liability under Section 1981. The complaint states that each plaintiff repeatedly sought work assignments, for which they were qualified, in person and by phone from MVP's Cicero office, at times when MVP was referring laborers to the defendant client companies. When the plaintiffs visited MVP's Cicero office, they provided their contact information to MVP employees, signed in on daily sign-in sheets, and waited for an assignment. On some occasions, the plaintiffs were told by MVP employees that they would be called when work became available. Four of the plaintiffs received work assignments from MVP to companies other than the defendant client companies. The complaint, therefore, pleads sufficient facts to establish that the plaintiffs sought to secure employment relationships with MVP.

The plaintiffs, to be sure, also argue that their allegations amount to more and allege that they actually entered into a contractual relationship with MVP. Pls.' Resp. 5, ECF No. 92. Under the plaintiffs' theory, MVP discriminated against them after they had formed a contractual relationship with MVP and the discrimination concerned the enforcing of an existing contract, not the making of a proposed contract. *Id.* As addressed in Section II below, whether the plaintiffs alleged a pre-contract or a post-contract formation claim under Section 1981 is relevant to the defendants' statute of limitations arguments. But the Seventh Circuit has held that a Section 1981 claim need not make this distinction to survive a motion to dismiss. *See Rapid Test Prods., Inc. v. Durham Sch. Servs., Inc.*, 460 F.3d 859, 860-61 (7th Cir. 2006). In *Rapid Test*, a

Section 1981 case, the court held that because a complaint need only allege claims and not legal theories, the plaintiff was not required to distinguish in its complaint whether the alleged discrimination it suffered took the form of failure to make a contract or a decision to break a contract. *Id.* Here, as in *Rapid Test,* the plaintiffs' grievance is straightforward: the defendants refused to use the plaintiffs' services because the plaintiffs are African-Americans. "Whether that refusal took the form of failure to make a contract, or a decision to break a contract, is a detail—and under § 1981 an irrelevant detail." *Id.* at 861; *see also, e.g.*, *Pruitt v. Pers. Staffing Grp., LLC*, No. 16 C 5079, 2017 WL 1128457, at *2 (N.D. Ill. Mar. 23, 2017) (denying motion to dismiss based on argument that the plaintiffs' claims related to pre-contract conduct only and ruling that it was premature, in absence of facts and evidence relating to the plaintiffs' contractual relationship to the defendants, to resolve the issue of if and when a contractual relationship was formed).

Whether premised on a theory of pre-contract formation or post-contract enforcement, the complaint more than adequately alleges that the plaintiffs' efforts to obtain work at the defendant client companies were thwarted by discriminatory practices adopted by those client companies (and MVP). The alleged discriminatory directions or requests from the defendant client companies to MVP that MVP should not assign African American laborers to the client companies is a race-based impediment that would significantly interfere with the plaintiffs' contractual relationship with MVP.[7] *See Thomas*, 2017 WL 386656, at *2 (complaint allegations

---

[7] The plaintiffs argue that, in addition to alleging Section 1981 claims for third-party interference against the defendant client companies, the complaint alleges sufficient facts to support Section 1981 claims against the defendant client companies under theories of vicarious and joint employer liability. The complaint alleges that MVP acted as an agent for the client companies and the plaintiffs argue that the agency relationship provides a basis for holding the defendant client companies liable for MVP's discriminatory conduct. It is not clear, however, that an agency theory could support liability for the client companies if the Section 1981 claim is

11

that demonstrate non-employer defendant's racially-motived interference with plaintiff's employment contract were sufficient to state a claim under Section 1981). The complaint alleges that MVP and the defendant client companies intentionally discriminated against the plaintiffs, who are African American, on the basis of their race. Specifically, the plaintiffs allege that MVP discriminated against them by refusing to assign them work at the defendant client companies. The complaint also alleges that the client companies engaged in intentional discrimination by directing MVP not to send African American laborers to work at their companies. These allegations are supported by a number of facts asserted in the pleading. The plaintiffs allege that when they visited MVP's Cicero office, they observed that many laborers who appeared Hispanic and spoke Spanish were assigned to work or were provided transportation by MVP vans and busses, while laborers who appeared to be African American were not assigned work and were not offered transportation by MVP. The plaintiffs also allege that they never received an assignment from MVP to the defendant client companies despite their qualifications and repeated attempts. In addition, according to former MVP dispatchers, drivers, and onsite representatives, the defendant client companies directed MVP not to assign African American laborers to their companies and MVP complied and instructed its employees to comply with the discriminatory requests. The complaint also describes the code words that the defendant client companies used to refer to African American laborers and Hispanic laborers when they made

---

based upon a contractual relationship with MVP, as the plaintiffs allege, and the Court makes no definitive assessment in that regard. The Court similarly refrains from assessing the viability of plaintiffs' theory that MVP acted as a joint employer with the defendant client companies. It is not clear that "joint employer" status is relevant to establishing Section 1981 liability. "Employer" status, whether joint or not, is required for Title VII liability, but not Section 1981 liability. *See Armour v. Homer Tree Servs., Inc.*, 15 C 10305, 2017 WL 4785800, at *7 n.18 (N.D. Ill. Oct. 24, 2017).

their discriminatory requests to MVP. The plaintiffs further allege that MVP's recruiting efforts were conducted in predominantly Latino neighborhoods and in Spanish language.

These facts easily suffice to allege intentional discrimination by MVP and the defendant client companies on the basis of race. The Court, therefore, denies the defendants' motion to dismiss for lack of standing and for failure to state a claim.

## II. Time-Barred Claims

The defendant client companies also move to dismiss and strike the plaintiffs' Section 1981 claims that are based on events occurring before December 6, 2014 because they are time-barred by the applicable two-year statute of limitations.

Under Seventh Circuit law, a two-year statute of limitations applies to Section 1981 claims relating to pre-contract formation conduct, such as failure-to-hire claims, and a four-year statute of limitations applies to Section 1981 claims relating to post-contract formation conduct. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269, n.4 (7th Cir. 2004); *Porter v. Pipefitters Ass'n Local Union 597, U.A.*, No. 12-cv-9844, 2013 WL 5162206, at *4 (N.D. Ill. Sept. 12, 2013). A plaintiff, however, is not required to negate an affirmative defense, such as the expiration of the statute of limitations, in his or her complaint. *Stuart v. Local 727, Int'l Bhd. Of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014). Affirmative defenses often "turn on facts not before the court at the pleading stage." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Therefore, dismissal of a claim based on an affirmative defense "is appropriate only when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Id.*

The defendant client companies argue that the complaint "undeniably" alleges only pre-contract failure-to-hire claims, and therefore a two-year statute of limitations applies to each

Section 1981 claim against them. Defs.' Mem. in Supp. of Segerdahl Motion 6-7, ECF No. 53. In support of their argument, the defendants rely heavily on an allegation in the complaint that is repeated in each count against each company: "this count arises under [Section] 1981 for [the defendant's] discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with [the defendant's] discriminatory requests as described more fully in paragraphs 24-79." *Id.*; Defs.' Reply 15, ECF No. 96. The plaintiffs respond that their complaint alleges conduct that occurred after they entered into contracts with MVP and is therefore subject to a four-year statute of limitations. According to the plaintiffs, their complaint repeatedly references MVP's assignment practices and its failure to assign the plaintiffs to the defendant client companies, which is post-contract formation conduct.

The plaintiffs' assertion that they entered into contracts with MVP, the defendants contend, is merely conclusory with no supporting factual allegations. The Court, however, disagrees. The complaint contains facts which could support the plaintiffs' assertion. According to the complaint, a laborer who walked into MVP's Cicero office seeking work was directed to sign in on a sign-in sheet and provide his contact information to an MVP employee, who would either provide the laborer with an assignment or tell him that he will be contacted when a daily job becomes available. This process may plausibly be inferred to have involved an implicit or explicit offer by MVP to pay the laborer for work performed, once work became available, and an acceptance by the laborer through a promise to perform the work once it became available. *See Shirley v. Staffing Network Holdings, LLC*, No. 16 C 6279, 2016 WL 6599951, at * 2-3 (N.D. Ill. Nov. 8, 2016) (finding that plaintiff's Section 1981 claims could be subject to either a four-year or two-year limitations period, but the record was insufficient at the pleading stage to determine whether the process of signing up with a temporary employment agency constituted a

contractual relationship); *Ferrara*, 2014 WL 3611130, at *7, n.10 (finding that the record was insufficient at the pleadings stage of the case to enable the court to evaluate whether the plaintiffs entered into a contractual relationship when they signed up with temporary employment agencies). Furthermore, the complaint alleges that four of the five plaintiffs did receive assignments from MVP to clients other than the defendant client companies, a fact which also supports the assertion that those plaintiffs and MVP had entered into an at-will employment contract.

The complaint's reference to "discriminatory practices in hiring" does not, as the defendants argue, preclude the application of a four-year statute of limitations for post-contract formation conduct. Indeed, the Seventh Circuit effectively scuttled that argument in *Rapid Test*, 460 F.3d at 860-61, where it held that the district court was wrong to limit the plaintiff's claim to one based on a discriminatory breach of an existing contract simply because the plaintiff omitted from its complaint an argument that the defendant discriminated in the opportunity to make contracts. *Id.* As noted above, the complaint need not definitively set forth one theory or the other to state a claim under Section 1981, and it need not do so to negate a possible affirmative defense based on the statute of limitations. Despite the fact that the complaint labels much of the conduct it alleges as a "hiring practice," if its effect was to interfere with an already-existing contractual relationship between the plaintiffs and MVP by causing MVP to refuse the plaintiffs certain work assignments, the four-year statute of limitations could apply.

The complaint does not unambiguously establish that all or some of the plaintiffs' claims against the defendant client companies are barred by the two-year statute of limitations. The applicable statute of limitations will turn on whether and when the plaintiffs entered into a contract with MVP. This is a question that cannot be definitively resolved at this stage of the

case given its fact intensive nature. *See Pruitt*, 2017 WL 1128457, at *2 (denying motion to dismiss based on argument that the plaintiffs' claims related to pre-contract conduct only and ruling that it was premature, in absence of facts and evidence relating to the plaintiffs' contractual relationship to the defendants, to resolve the issue of if and when a contractual relationship was formed); *Shirley*, 2016 WL 6599951, at * 2-3 (denying motion to dismiss and finding that the complaint did not provide sufficient evidence about the nature of the plaintiff's relationship with the defendant employment agency to determine whether a contractual relationship existed); *Ferrara*, 2014 WL 3611130, at *7, n.10 (same). The plaintiffs have not pled themselves out of court with regard to events occurring before December 6, 2014 and therefore, the defendants' motion to dismiss and strike is denied.[8] *See Pruitt*, 2017 WL 1128457, at *2; *Shirley*, 2016 WL 6599951, at * 2-3; *Ferrara*, 2014 WL 3611130, at *7.

\* \* \*

For the reasons set forth above, the Court denies the defendant client companies' motions to dismiss. Answers for the defendant client companies who have not yet answered or who have submitted partial answers to the complaint are due April 11, 2018. A status hearing is set for April 18, 2018.

Date: February 22, 2018

John J. Tharp, Jr.
United States District Judge

---

[8] In their reply brief, the defendant client companies requested that if their motion to dismiss is denied, the Court order targeted discovery on the existence of a contractual relationship between the plaintiffs and MVP. This is one of many issues that may be necessary to consider in determining the appropriate discovery schedule for this litigation. The Court declines to address it in this opinion based solely on the defendants' request in their reply brief.