**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTWOIN HUNT, JAMES ZOLLICOFFER, NORMAN GREEN, JAMES LEWIS and KEVIN JAMES, on behalf of themselves and other similarly situated laborers, | |
| Plaintiffs, | Case No. 16 C 11086 |
| v. | Judge John J. Tharp, Jr. |
| PERSONNEL STAFFING GROUP, LLC d/b/a MVP, THE SEGERDAHL CORP., MERCURY PLASTICS, INC., MPS CHICAGO, INC. d/b/a JET LITHO, THE PENRAY COMPANIES, INC. ADVERTISING RESOURCES, INC. d/b/a ARI PACKAGING, and LAWRENCE FOODS, INC., | Magistrate Judge Finnegan |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PRELIMINARY APPROVAL OF THE**
**PARTIES' PARTIAL CLASS ACTION SETTLEMENT AGREEMENT**

*Respectfully submitted on behalf of*
*Plaintiffs by:*

Christopher J. Williams
National Legal Advocacy Network
53 W. Jackson Blvd, Suite 1224
Chicago, Illinois 60604

Joseph M. Sellers
Shaylyn Cochran
Harini Srinivasan
Cohen Milstein Sellers & Toll P.L.L.C.
1100 New York Avenue, N.W., Suite 500
Washington, D.C. 20005

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 2

        A.      The Litigation.............................................................................................. 2

        B.      The Settlement ............................................................................................ 2

        C.      The Terms of the Settlement Agreement .................................................. 4

                1.      *Monetary Terms* ............................................................................. 4

                2.      *Notice to Class Members of the Settlement*.................................. 7

                3.      *Class Representatives Service Award and General Release
                        Payments* ........................................................................................ 8

                4.      *Attorneys' Fees* .............................................................................. 9

III.    ARGUMENT ........................................................................................................... 9

        A.      The Class Should be Certified for Settlement Purposes ....................... 10

                1.      *The Proposed Settlement-Only Class Meets the Requirements of
                        Rule 23(a)*..................................................................................... 11

                2.      *The Proposed Settlement-Only Class Meets the Requirements of
                        Rule 23(b)(3)* ............................................................................... 12

        B.      Preliminary Approval is Appropriate Because the Settlement Agreement is
                Fair, Reasonable, and Adequate............................................................... 13

                1.      *Strength of Plaintiffs' Case Balanced against Amount of Settlement* ....... 14

                2.      *Likely Complexity, Length, and Expense of Litigation* ............ 15

                3.      *Opposition to the Partial Settlement Agreement* ...................... 16

                4.      *Opinion of Competent Counsel* ................................................. 16

                5.      *Stage of the Proceedings and Discovery at the Time of Settlement* .......... 16

        C.      The Proposed Settlement Notice is Fair and Satisfies Due Process .................... 17

IV.     CONCLUSION...................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302 (N.D. Ill. 2011) .................. 13

*Amchem Products v. Windsor*, 521 U.S. 591 (1997) ............................................................. 10, 12

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) ................ 13, 14

*Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 U.S. Dist. LEXIS 1819 (S.D. Ill. 2004) .... 9

*Butler v. Sears, Roebuck & Co*., 727 F.3d 796, 801 (7th Cir. 2013) ............................................ 12

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ................................................................ 8

*Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) ............................................................. 16

*In re AT & T Mobility Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) .......... 15, 16

*In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979) ......... 14

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ................................................................. 13, 14

*Lucas, et al. v. Ferrara Candy Company, et al.,* Case No. 13 C 01525 (N.D. Ill. 2016) .............. 9

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) ........................ 12

*Schulte v. Fifth Third Bank*, 2010 WL 8816289 (N.D. Ill., 2010) ................................................ 17

*Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004) ...................................... 10, 12

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) ................. 14

**Statutes**

42 U.S.C. § 1981 ........................................................................................................ 2, 4, 7, 14

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq* ............... 2, 4, 7

**Rules**

Federal Rule of Civil Procedure 23(a) .................................................................................. 10, 11

Federal Rule of Civil Procedure 23(b) .................................................................................. 10, 12

Federal Rule of Civil Procedure 23(e) ........................................................................................ 13

**Treatises**

*Manual for Complex Litigation, Third* ........................................................................................ 13

## I.  INTRODUCTION

After vigorous advocacy and negotiation, Plaintiffs James Zollicoffer, Norman Green, James Lewis and Kevin James ("Named Plaintiffs"), individually and on behalf of all others similarly situated (the "Settlement Class"), and Defendants Personnel Staffing Group, LLC d/b/a MVP ("MVP"), The Segerdahl Corp. ("Segerdahl"), Mercury Plastics, Inc. ("Mercury"), The Penray Companies, Inc. ("Penray"), Advertising Resources, Inc. d/b/a ARI Packaging ("ARI") and Lawrence Foods, Inc. ("Lawrence Foods") (collectively, the "Settling Defendants") entered into a Class Action Settlement Agreement to resolve certain claims alleged against the Settling Defendants in Plaintiffs' Complaint [Dkt. No. 1] on behalf of the putative Settlement Class. Plaintiffs submit this Memorandum of Law in support of their Unopposed Motion for Preliminary Approval of the Parties' Partial Class Action Settlement Agreement (hereafter "Partial Settlement Agreement").

The Partial Settlement Agreement, attached hereto as Attachment 1, establishes a cash fund of Five Hundred Eighty-Eight Thousand Two Hundred Sixty and 65/100 Dollars ($588,260.65), payable to the class, inclusive of administration costs, attorneys' fees and costs, and service and general release awards to the Class Representatives.

The terms of the Partial Settlement Agreement are fair, reasonable, and adequate and fall within the range of possible approval. The Partial Settlement Agreement was reached as a result of arm's-length negotiations, in which Plaintiffs and Segerdahl initially engaged in bilateral negotiations with the assistance of a private mediator, Hunter Hughes, and exchanged substantial information relevant to Plaintiffs' claims. After reaching a tentative settlement with Segerdahl, Plaintiffs engaged in ongoing settlement negotiations with the remaining Defendants and reached a settlement agreement with all Defendants except MPS Chicago, Inc. d/b/a Jet Litho ("MPS") (the "Non-Settling Defendant"). Plaintiffs believe that this Partial Class Action Settlement

Agreement is in the best interests of the class based on their assessment, in consultation with their attorneys, of the strengths and weaknesses of the case and the benefits of settling with Defendants. Accordingly, Plaintiffs respectfully request that the Court grant their Motion and enter the proposed Order Certifying the Settlement-Only Class and Preliminarily Approving the Partial Class Action Settlement Agreement. *See* Exhibit D to Attachment 1.

## II.    BACKGROUND

### A.    The Litigation

On December 6, 2016, Plaintiffs, on behalf of themselves and all other similarly-situated individuals filed a Class Action Complaint in the United States District Court for the Northern District of Illinois ("Complaint"), alleging violations of 42 U.S.C. § 1981 ("Section 1981"). The Settling Defendants deny all liability and wrongdoing associated with the claims alleged in Plaintiffs' Complaint.  Specifically, the Settling Defendants deny that they discriminated against the Plaintiffs or other African Americans on the basis of race in violation of Title VII, Section 1981, or any other state or federal law.  The Settling Defendants also deny that litigation of the Action as a class action is appropriate, and reserve the right to argue that the Action should not be certified as a class action in the event this Partial Settlement Agreement is not approved.

### B.    The Settlement

In an effort to determine whether the Parties could settle this dispute prior to a lengthy litigation, the Parties' counsel, who are experienced class action attorneys, participated in detailed settlement negotiations. After exchanging information among counsel about the claims and putative Class Members, Plaintiffs and Defendant Segerdahl engaged the services of Hunter Hughes, a well-respected mediator, who was familiar with the underlying allegations in this Action, as he previously served as a mediator in another case involving similar allegations and parties. On June 20, 2019, Plaintiffs and Defendant Segerdahl participated in a mediation that

lasted much of the day and reached a settlement based on the settlement terms set forth in more detail in this Agreement. During the negotiations, counsel for the Plaintiffs and Segerdahl bargained vigorously on behalf of their respective clients. All negotiations were conducted at arm's length and in good faith.

Following the partial settlement reached with Defendant Segerdahl in this matter, Plaintiffs' counsel continued to negotiate with the remaining Defendants in this lawsuit. Between June 20, 2019 and October 30, 2019, Plaintiffs and Defendants Mercury, Penray, ARI and Lawrence Foods also reached a settlement in this matter based on the settlement terms set forth in more detail in this Agreement. During the negotiations, counsel for the Plaintiffs and Defendants Mercury, Penray, ARI and Lawrence Foods each bargained vigorously on behalf of their respective clients. All of these negotiations were similarly conducted at arm's length and in good faith.

Following the partial settlement with Defendants Mercury, Penray, ARI and Lawrence Foods, Plaintiffs and Defendant MVP continued to negotiate and, on Friday, December 6, 2019, also reached a settlement in this matter based on the settlement terms set forth in more detail in this Agreement. During the negotiations, counsel for the Plaintiffs and Defendant MVP each bargained vigorously on behalf of their respective clients. All of these negotiations were similarly conducted at arm's length and in good faith.

The Settling Parties and their counsel recognize that, in the absence of an approved settlement, they would face a long litigation course, including discovery, motions for class certification, expert discovery, motions for summary judgment, trial, and potential appellate proceedings that would consume time and resources and present each party with ongoing litigation risks and uncertainties. The Settling Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, and have decided that an amicable settlement pursuant to

3

the terms and conditions of this Partial Settlement Agreement is more beneficial to them than continued litigation. Class Counsel believes that the terms of the Partial Settlement Agreement are in the best interests of the Settlement Class and are fair, reasonable, and adequate.

      C.    <u>The Terms of the Settlement Agreement</u>

      1.    *Monetary Terms*

On December 6, 2019, the Settling Parties reached agreement on the final terms of a partial class action settlement agreement in this matter. The parties have agreed to ask the Court to certify the following class for settlement purposes only:

> All African Americans who sought work assignments through Personnel Staffing Group, LLC d/b/a MVP at its Cicero, Illinois Office at any time between December 6, 2012 and the Preliminary Approval Date, but who, on one or more occasions, were not assigned to work at The Segerdahl Corp., Mercury Plastics, Inc., The Penray Companies, Inc., Advertising Resources, Inc., Lawrence Foods, Inc., or MPS Chicago, Inc. d/b/a Jet Litho by Personnel Staffing Group, LLC d/b/a MVP.

Attachment 1, Partial Settlement Agreement at ¶ 7.

The Partial Settlement Agreement, attached as Attachment 1, establishes a Total Settlement Fund of Five Hundred Eighty-Eight Thousand Two Hundred Sixty and 65/100 Dollars ($588,260.65), of which Defendant MVP will solely be responsible for paying Three Hundred Thirty-Seven Thousand Five Hundred and 00/100 Dollars ($337,500.00), Defendant Segerdahl will solely be responsible for paying Seventy-Three Thousand Nine Hundred Seventy-Two and 25/100 Dollars ($73,972.25), Defendant Mercury will solely be responsible for paying Seventy-Four Thousand and 00/100 Dollars ($74,000.00), Defendant Penray will solely be responsible for paying Nineteen Thousand Six Hundred Sixty-Six and 90/100 Dollars ($19,666.90), Defendant ARI will solely be responsible for paying Forty-Three Thousand One Hundred Twenty-One and 50/100 Dollars ($43,121.50) and Defendant Lawrence Foods will solely be responsible for paying Forty Thousand and 00/100 Dollars ($40,000.00), to resolve claims of race discrimination against

4

the Settling Defendants arising out of the Named Plaintiffs' and/or Class Members' non-assignment from MVP's Cicero Office to Segerdahl, Mercury, Penray, ARI or Lawrence Foods and against MVP arising out of the Named Plaintiffs' and/or Class Members' non-assignment from MVP's Cicero Office to Non-Settling Defendant MPS from December 6, 2012 through the Preliminary Approval Date, that the Named Plaintiffs and Settlement Class Members have or may have against the Settling Defendants. Explicitly not released and excluded from this settlement are any claims of race discrimination against MPS only (and not MVP) arising out of the Named Plaintiffs' and/or Class Members' non-assignment from MVP's Cicero Office to MPS, any claims of race discrimination arising out of the Named Plaintiffs' and/or Class Members' non-assignment from MVP's Cicero Office to Vee Pak, Inc. and/or Gold Standard Baking, Inc. raised in the matters of *Lucas, et al. v. Vee Pak, Inc., et al.,* Case No. 12 C 09672 (N.D. Ill.) and the *Green, et al. v. Personnel Staffing Group, LLC, et al.*, Case No. 13 C 01524 (N.D. Ill.), respectively, or to any of other client company of MVP (exclusive of Segerdahl, Mercury, Penray, ARI or Lawrence Foods), any conduct or omissions occurring after the Preliminary Approval Date or any rights that cannot be waived by law, including a right to file a charge of discrimination with an administrative agency, such as the United States Equal Employment Opportunity Commission ("EEOC") and any right to participate in any agency investigation or proceeding. However, Class Members who do not opt out of this Settlement will be waiving any right to recover a monetary award in connection with such a charge or investigation related to the Released Claims for a charge filed by any other individual, by the EEOC, or by any other city, local, state, or federal agency. Further, as part of the Settlement, MVP reserves, and does not waive, any and all defenses that have been or may be asserted in the matters of *Lucas, et al. v. Vee Pak, Inc., et al.,* Case No. 12 C 09672 (N.D. Ill.) or the *Green, et al. v. Personnel Staffing Group, LLC, et al.*, Case No. 13 C 01524 (N.D. Ill.) as

5

relates to claims arising from non-assignments from MVP's Cicero Office, including any such defenses related to payments received by Plaintiffs and/or Class Members as a part of this Partial Settlement Agreement. MVP also reserves, and does not waive, any and all defenses that have been or may be asserted in any actions that have been, or may be, brought against MVP related to claims arising from the non-assignment of laborers from MVP, including any such defenses related to payments received by Plaintiffs and/or Class Members as part of this Partial Settlement Agreement.

Pursuant to the terms of the Partial Settlement Agreement, each putative Class Member who files a valid, timely Claim Form (Attachment 1, Exh. A) will be allocated a proportionate share of the Settlement Amount after the Settlement Amount has been reduced by: (1) $5,000.00 to each of the Named Plaintiffs for executing a full release of all claims as to the Settling Defendants (with certain exceptions for MVP) and for helping to litigate and settle this Lawsuit; (2) no more than one-third of the Settlement Amount, as approved of and ordered by the Court, as payment for court approved attorneys' fees and reasonable costs, and (3) the costs of administering the settlement up through final approval of the settlement. The Settlement Amount, as reduced by the foregoing amounts, is referred to as the "Class Settlement Fund." The settlement payments are intended to compensate Class Members for the alleged harm they suffered from MVP's alleged failure to refer them from its Cicero, Illinois branch office to Segerdahl, Mercury, Penray, ARI, Lawrence Foods, or MPS for employment and consist of 50% wages and 50% compensatory damages. *Id.* Sec. VII.(A). Plaintiff and the Settling Defendants estimate that there will be approximately 3,000 individuals in the Class. Class Counsel estimates that each Class member will receive approximately $200.00, less a *pro rata* share of the cost of claims administration, attorneys' fees and/or a service award or general release payment to the Class Representative as

approved by the Court. Class members will receive more than this amount as a *pro rata* share of the Settlement Fund if fewer than 3,000 individuals file valid and timely claim forms. The Parties have agreed that 50% of each Claimant's Settlement Payment will be considered wages and will be reported as such on an IRS Form W-2 and that the remaining 50% of each Claimant's Settlement Payment will be considered compensatory damages and will be reported as such on an IRS Form 1099 where mandated by the Internal Revenue Service.

2. *Notice to Class Members of the Settlement*

The Partial Settlement Agreement establishes a notice process through which Settlement Class Members will obtain information about this settlement of the Litigation with Defendants, how to file, and the deadline by which Settlement Class Members must file a claim, objection or opt-out of the Settlement and how the Settlement Funds will be distributed. *See* Attachment 1, Section IV. The Notice Provisions in the Settlement Agreement provide that notice will be provided to the putative class in two manners as follows:

a. *Mailing of Notice*

A list of African American laborers assigned from the MVP Cicero Branch Office with race is not available so the parties have agreed that Defendant MVP will provide the Claims Administrator with a list of assignees from its Cicero Branch Office during the Class Period ("MVP Assignee List"). A claim form and abridged notice (Attachment 1, Exhs. A and B) shall be mailed to members of the Settlement Class for whom an address is available. The claim form shall have the following language in English and Spanish:

> Be advised – This agreement is only for African-Americans who allege they were denied an assignment to the Segerdahl Corp., Mercury Plastics, Penray, ARI, Lawrence Foods, or MPS from MVP's Cicero Office. In order to recover a settlement payment, you must respond to the following question below under oath. Do not complete this claim form if you are not African-American.

7

To have a valid claim, each such Settlement Class Member must affirm, under oath, that she or he is African American and sought work assignments from the MVP Cicero Branch Office during the Class Period.

        b.     *Publishing Notice*

For Settlement Class members who were never given an assignment by MVP and are not in the MVP database, Class Counsel shall cause notice to be published in two community newspapers serving African Americans in the area of the MVP Cicero Branch Office and through social media. The information to be published shall provide contact information for Class Counsel and will direct putative Settlement Class Members to a settlement website, www.Hunt-MVP_Settlement.com, which shall provide the information from the notice packet and provide information about how to file a claim and a downloadable Claim Form. Attachment 1, Sec. IV.(C).

        3.     *Class Representatives Service Award and General Release Payments*

The Partial Settlement Agreement contemplates a Service Award and General Release Payment of $5,000 for each of the four Class Representative to acknowledge their service to the Settlement Class as approved by the Court. *See* Attachment 1, Sec. VIII. Such payments are warranted in light of the Class Representatives' efforts in this case, which resulted in a Partial Class Action Settlement that benefits the Class and because they are being asked to release all of their claims against the Settling Defendants (with certain exceptions as to MVP), something no other Settlement Class Member is being asked to do.

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff

expended in pursuing the litigation." *Id.* Recent decisions in this Circuit have approved incentive awards as high as $20,000 per named plaintiff. *See, e.g.*, *Berger v. Xerox Corp. Ret. Income Guar. Plan*, No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819, at *7 (S.D. Ill. Jan. 22, 2004); *see also Lucas, et al. v. Ferrara Candy Company, et al.,* Case No. 13 C 01525 (N.D. Ill., Dec. 2, 2016), (Dkt. No. 194, ¶4) (awarding $6,500 enhancement award in a similar race discrimination case arising under Title VII and Section 1981).

In this case, the Class Representatives were responsible for initiating and maintaining this action against Defendants. They participated in the case, provided information and documents through discovery responses, participated in the settlement negotiations, and performed everything that was asked of them. Without the efforts of the Class Representatives, the claims against Defendants would not have been filed and this Partial Settlement Agreement would not have been achieved. As a result of these successful efforts, the proposed service award and general release to the Class Representative is well justified.

4.     *Attorneys' Fees*

The Partial Settlement Agreement provides that Class Counsel will apply to the Court for the payment of attorneys' fees and costs prior to final approval of the Partial Settlement Agreement. Under the Agreement, Class Counsel may seek attorneys' fees and litigation expenses and/or costs not to exceed approximately one-third of the Settlement Amount or One Hundred Ninety-Six Thousand and 00/100 Dollars ($196,000.00). *See* Attachment 1, Sec. VIII. This award will cover all of Class Counsel's fees and costs through the completion of the lawsuit. *See id.*

## III.     ARGUMENT

The Court should grant preliminary approval of the Partial Class Action Settlement Agreement between Plaintiffs and the Settling Defendants because the Agreement is fair, reasonable, and adequate. The Court should further certify the proposed Class for settlement

9

purposes and approve the class notice plan.

A.      The Class Should be Certified for Settlement Purposes

As part of this Partial Settlement Agreement, Plaintiffs and the Settling Defendants ask the Court to certify the class claims of race discrimination arising out of the Named Plaintiffs' and/or Class Members' non-assignment from MVP's Cicero Office to Segerdahl, Mercury, Penray, ARI, Lawrence Foods, and MPS from December 6, 2012 through the Preliminary Approval Date for settlement purposes pursuant to Federal Rule of Civil Procedure 23(b)(3). The parties are not seeking certification of any other claims of race discrimination arising out of assignments or non-assignment of Class Members from MVP to any other client company or any conduct or omissions occurring after the Preliminary Approval Date as part of this settlement.

In *Amchem Products v. Windsor*, 521 U.S. 591 (1997), the Supreme Court acknowledged that cases may be certified for settlement purposes only. The Court explained that the "dominant concern" on which a court should focus when deciding whether to certify a settlement class is "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id*. at 621. The Court further held that the fact of "settlement is relevant to class certification" and relieves the district court of inquiring into "whether the case, if tried, would present intractable management problems." *Id*. at 619, 620, 622; *see also Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004). "But other specifications of the rule . . . demand undiluted . . . attention in the settlement context." *Amchem*, 521 U.S. at 620. A settlement class should be certified where the four requirements of Federal Rule of Civil Procedure 23(a) are satisfied, as well as one of the three subsections of Federal Rule of Civil Procedure 23(b).

In the Settlement Agreement, the parties agreed to the following opt-out Settlement class

pursuant to Rule 23(b)(3):

> All African Americans who sought work assignments through Personnel Staffing Group, LLC d/b/a MVP at its Cicero, Illinois Office at any time between December 6, 2012 and the Preliminary Approval Date, but who, on one or more occasions, were not assigned to work at The Segerdahl Corp., Mercury Plastics, Inc., The Penray Companies, Inc., Advertising Resources, Inc., Lawrence Foods, Inc., or MPS Chicago, Inc. d/b/a Jet Litho by Personnel Staffing Group, LLC d/b/a MVP.

Attachment 1, Sec. III.(7). As defined, this Class meets the conditions set forth in Rule 23(a) and

Rule 23(b)(3).

1. The Proposed Settlement-Only Class Meets the Requirements of Rule 23(a)

The proposed settlement subclass is large enough to meet the numerosity requirement, as

there are an estimated 3,000 potential members of the class. There are common questions of law

and fact, thus meeting the commonality requirement, as Plaintiffs have alleged a general policy or

practice of racial steering in which Defendant MVP erected barriers to referring African-American

laborers to Defendants Segerdahl, Mercury, Penray, ARI, Lawrence Foods, and MPS, which is a

common contention for each putative Class Member and can be satisfied using evidence common

to the class. Plaintiffs' claims arise out of the same alleged events and conduct, thus meeting the

typicality requirement, as each member of the putative subclass sought, but was denied,

employment through Defendants MVP for certain positions at Segerdahl, Mercury, Penray, ARI,

Lawrence Foods, and MPS on one or more occasions during the Class Period. The Class

Representatives are able to fairly and adequately protect the interests of the Class and to actively

prosecute the interests of the Class through competent counsel, thus meeting the requirement of

fair and adequate representation.

2.     The Proposed Settlement-Only Class Meets the Requirements of Rule
       23(b)(3)

"Confronted with a request for settlement-only class certification, a district court need not

inquire whether the case, if tried, would present intractable management problems, for the proposal

is that there be no trial.'" *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620). Here,

the proposed class also meets the requirements of Rule 23(b)(3) because common issues

predominate over individual issues and a class action is superior to other potential mechanisms for

resolving this dispute.

The common question is whether Defendants had a general policy or practice of racial

steering. Pursuant to this policy or practice, each putative Class Member was allegedly denied the

opportunity to work on one or more occasions in certain positions at Segerdahl, Mercury, Penray,

ARI, Lawrence Foods, and MPS typically filled by Defendant MVP through its Cicero Branch

Office because of their race. This common-liability question predominates in the resolution of this

lawsuit over any individualized questions. Any such individual questions would relate primarily

to the amount of damages owed individual class members and would not defeat certification. *See*

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (collecting cases

holding that the need for individual damage determinations does not automatically defeat class

certification); *accord Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("It would

drive a stake through the heart of the class action device . . . to require that every member of the

class have identical damages" and explaining that it is inappropriate to simply count the number

of individual issues, "regardless of relative importance," and conclude that they must

predominate).

Likewise, class treatment is superior to other available methods of litigation. It would be

far more costly and impractical for each individual class member to separately seek discovery of

12

Defendants' policies, obtain data concerning the assignment of laborers to Segerdahl, Mercury, Penray, ARI, Lawrence Foods, and MPS, and obtain expert analyses of their specific case than to proceed with this class action. The disparity in resources between individual laborers and the Settling Defendants, companies with substantial resources, would likely deter many—if not all—potential plaintiffs from proceeding individually. Moreover, separate lawsuits would require analysis of the same evidence by myriad courts and juries. Certification avoids these difficulties and affords the Class Members a forum in which their claims may be heard and adjudicated efficiently.

B.     Preliminary Approval is Appropriate Because the Settlement Agreement is Fair, Reasonable, and Adequate

Under Federal Rule of Civil Procedure 23(e), the Court should approve a proposed class action settlement upon finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This approval takes place in a two-step process. First, the Court conducts a preliminary review of the agreement for basic fairness, in order to issue notice to the certified settlement class; following notice, the Court conducts a final fairness hearing to approve the Settlement and disbursement of payments to the class. *See, e.g.*, *Manual for Complex Litigation, Third* § 21.632.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). When presented with a motion for preliminary approval of a class action settlement, courts are asked to simply determine whether the proposed settlement is within the range of possible approval. *See Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). This preliminary review is not to be confused with "a full-fledged inquiry" and instead functions to ensure that the distribution of class notice is appropriate. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). Courts should therefore consider the facts "in the light most favorable to the settlement"

13

and focus on the settlement as a whole, rather than on each individual component. *Id.* at 1191 (quoting *Armstrong*, 616 F.2d at 315).

In the Seventh Circuit, courts must consider five factors in evaluating the fairness of a settlement, including (1) "the strength of Plaintiff's case compared to the amount of defendants' settlement offer," (2) "the likely complexity, length and expense of the litigation," (3) "the amount of opposition to settlement among affected parties," (4) "the opinion of competent counsel," and (5) "the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)).

As explained below, the Partial Settlement Agreement is the product of extensive arm's-length negotiations between experienced attorneys based on sufficient evidence and information and, in part, with the assistance and judgment of Hunter Hughes. The Partial Settlement Agreement falls within the "range of possible approval." It is, therefore, sufficient to warrant public notice and a hearing, and preliminary approval should be granted.

### 1.    Strength of Plaintiffs' Case Balanced against Amount of Settlement

"The most important factor relevant to the fairness of a class action settlement . . . is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs.*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)). Here, the proposed Partial Settlement Agreement strikes an appropriate balance between the strength of Plaintiffs' case and the benefit to the Class of securing a settlement. The Partial Settlement Agreement was achieved early in the litigation after an intensive mediation, and because the Parties exchanged information informally, Plaintiffs have been spared the cost of formal discovery.

14

The Partial Settlement Agreement provides certain monetary relief for members of the class. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money . . .") (internal citations and quotations omitted). Specifically, the Partial Settlement Agreement calls for the Settling Defendants to pay a Total Settlement Amount of Five Hundred Eighty-Eight Thousand Two Hundred Sixty and 65/100 Dollars ($588,260.65), less any service award to the Named Plaintiffs and attorneys' fees and costs as approved by the Court and any claims administration cost (the "Class Settlement Fund"), from which Class Members can recover a *pro rata* share of the total Class Settlement Fund based on the number of claims made.

Plaintiff and his counsel believe that the Partial Settlement Agreement reached in this case represents a reasonable compromise, particularly in light of the early procedural posture, the novelty of the legal issues and the potential risks at trial. The Partial Settlement Agreement will provide immediate and tangible benefits to African American laborers who have been unable to obtain job assignments at Segerdahl, Mercury, Penray, ARI, Lawrence Foods, or MPS from MVP's Cicero Branch Office.

2.     Likely Complexity, Length, and Expense of Litigation

An early Settlement allows Plaintiffs and the Class to recover lost earnings while avoiding what certainly would have been a complex, long, and expensive litigation against the Settling Defendants. Indeed, although this Partial Settlement Agreement has occurred relatively early in the life of the litigation, it comes almost three years after the lawsuit was filed; undoubtedly, discovery, class certification proceedings and summary judgment briefing would add years to the litigation, before Plaintiffs ever reached a trial.

The web of overlapping, complex legal issues in this case cannot be overstated: joint-employer liability, the appropriate limitations period for the Section 1981 period, purported individualized issues with respect to class certification, and the Settling Defendants' challenges to the manageability of these claims through a class action. Although Plaintiffs have been and remain prepared to actively litigate these issues, the Partial Settlement Agreement yields a comparable result without the risks and costs associated with continued litigation.

### 3. Opposition to the Partial Settlement Agreement

Because notice has not been sent, it is impossible to know if there will be any objectors to the Settlement. *In re AT&T*, 270 F.R.D. at 349. However, Plaintiffs are not aware of any objectors to the Partial Settlement Agreement at this time. Moreover, because Plaintiffs' counsel, aided by the Named Plaintiffs, has maintained open communication with laborers in Chicago's African-American community as part of the investigation and litigation of this case, Plaintiffs believe that there will be few, if any, objectors to this Partial Settlement Agreement.

### 4. Opinion of Competent Counsel

In evaluating the fairness of a settlement, courts may "rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982). Counsel for Plaintiffs and the Settling Defendants are experienced litigators, and Plaintiffs and their counsel submit to the Court that there is no collusion. As noted above, Plaintiffs' counsel further believes that this Partial Settlement Agreement is in the best interests of the Settlement Class, in that it provides certain monetary relief for each individual's damages.

### 5. Stage of the Proceedings and Discovery at the Time of Settlement

That the Partial Settlement Agreement occurs at this early stage of the litigation is a great benefit to the Class Members, as Plaintiffs have secured a recovery for these Class Members without the financial and legal risks associated with formal discovery and motion practice.

16

Additionally, the informal discovery the Settling Defendants provided Plaintiffs and their counsel allowed the parties, with the assistance of a highly trained and skilled mediator in the initial negotiations with Segerdahl, to appropriately evaluate this matter. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 (N.D. Ill. Sept. 10, 2010) ("That counsel conducted no formal discovery prior to settlement does not necessarily preclude eventual final approval of the proposed settlement."). The Settlement yields a fair and reasonable result without the risks and financial burden of discovery and future litigation, and Plaintiffs respectfully urge this Court to approve it.

        C.       <u>The Proposed Settlement Notice is Fair and Satisfies Due Process</u>

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule requires that any such notice "must clearly and concisely state in plain, easily understood language" the following items: (1) the nature of the action, (2) the definition of the class certified, (3) the class claims, issues, or defenses, (4) that a class member may enter an appearance through counsel if the member so desires, (5) that the court will exclude from the class any members who requests exclusion, stating when and how members may elect to be excluded, and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice and Notice Plan set forth in Section IV(C) of the Partial Settlement Agreement are consistent with due process and meet the requirements of Rule 23. The Notice describes the nature of the case, defines the class and the class claims, and walks individuals through a series of questions that explain in plain language the terms of this Partial Settlement Agreement. Exhibits B and C to Attachment 1. It informs individuals that they have the option to participate, that each Class Member will be able to file a claim pursuant to a claims process

approved by the Court at the conclusion of the Litigation or when directed by the Court, that each Class Member may affirmatively opt out of the class (and how to do so), and the different consequences of each action. *See id.* The Notice identifies Class Counsel, explains that individuals have a right to seek counsel of their own to assist with making a claim at the appropriate time, and explains that Class Counsel intends to seek no more than approximately one-third of the Total Settlement Amount as attorneys' fees in this case. *See id.* The Notice also informs potential Class Members about the Court's fairness hearing and explains their rights to provide comments about or express disagreement with the Partial Settlement Agreement and requested attorney's fees at the hearing. *See id.*

The plan for notice in this case satisfies Rule 23(e)(1)'s command to "direct notice in a reasonable manner to all class members who would be bound by the proposal." As detailed in the Partial Settlement Agreement and set forth in Section II(C)(2)(a), *supra*, the Parties have agreed to mail Notice of the Settlement and Class Certification of the Partial Class Action Settlement and a claim form to all laborers in MVP's database who received assignments from MVP's Cicero Branch Office during the Class Period and have agreed on a method to inform recipients of the Notice and Claim Form, in English and Spanish, that this Partial Settlement Agreement applies only to African Americans and requires claimants to attest, under oath, that they are African American. For putative class members who are not in MVP's database, the Parties have agreed to provide notice by publication through both two local newspapers and targeted social media. *See* Section II(C)(2)(b), *supra*. The publication will direct putative Settlement Class Members to a website, www.Hunt-MVP_Settlement.com, where they can receive the information contained in the Notice, find a downloadable Claim Form and find contact information for Class Counsel. *See id.*; *see,* also, Attachment 1, Exhibits A, B, C and E.

The proposed Notice constitutes "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The Court should therefore approve the Notice and Notice Plan for this Partial Settlement Agreement.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant their Motion for Preliminary Approval of this Partial Class Action Settlement Agreement with the Settling Defendants The Segerdahl Corp., Mercury Plastics, Inc., The Penray Companies, Inc., Advertising Resources, Inc. and Lawrence Foods, Inc. and Personnel Staffing Group, LLC d/b/a MVP and for certification of the proposed Settlement Class for purposes of the Released Claims, enter the proposed order of preliminary approval attached as Exhibit D to Attachment 1 to this Memorandum, and direct that Notice be issued to the Settlement Class.

Dated: March 6, 2020

Respectfully submitted,

*/s/Christopher J. Williams*
Christopher J. Williams

*One of Plaintiffs' Attorneys*